Good morning. Good morning. Lawrence Padway appearing for appellant Sunita Sethi. On April 8th 2011 Liberty Mutual made a determination to stop paying disability benefits to Mrs. Sethi. At the time they wrote that they knew that she had been scheduled to start a functional restoration program on March 21st 2011 which was going to last six weeks. Plainly whatever physical capacity you may have you can't both be at work and at the doctor's office attending the functional restoration program at the same time. So the need to attend this program extends her disability until the program ends. Accordingly the determination to terminate benefits at the time it was made was wrong. Counsel, can you, your theory is that she was entitled to continuation of benefits or benefits during the three-week period? During that three-week period which later turned out the program did not last six weeks, it turned out that the program ended after three weeks and that she had had some flare-up as at the end of that time. So could you tell me is there a case that would support your argument? I couldn't find a legal authority in your briefing that was established that. That would establish that you can't work while you're at the doctor's office? Well something that was unrelated to her disability itself, you're saying she was through this training program that would distract her from being able to work? Yes. It wasn't the disability, it was something that the state was offering. Well it's related to the disability. So what's the analogous case? It's an interesting argument. I'm just trying to find out what would be the analogy in our existing case law? Well I think let me say two things. I had my ankle reconstructed a few years ago and I had a choice. I could either be in a wheelchair for the rest of my life or I could go get surgery on the ankle. So when I went to get surgery on the ankle, there's a time that I was off work, in which I think everybody would agree I would be disabled and unable to return to work. I don't think the functional restoration program really is any different from that situation. What would she be doing in that program? Just the fact that she's disabled. Okay. Well we don't know because it's not in the record because nobody asked those questions. She was representing herself. She was relying on Liberty Mutual to gather an adequate factual record. And Liberty Mutual had a form from her doctor which said, yeah, she can do sedentary work, but she is TTD, temporarily totally disabled, pending the functional restoration program. And Liberty did not ask any questions. So we don't know. But otherwise she was qualified to do, able to do sedentary work. To do some kind of sedentary work. Okay. Whether or not it was work which would be substantially renumerative, that's a different question. But some kind of sedentary work, yes. And you make an argument, it seems repeatedly, that Liberty shouldn't defer to Berkman's compensation finding of disability. But isn't that defined differently than what's the disability is defined here in this context? Well, in the context of the functional restoration program. I'm just guessing. Yes. Yes, there's, there are some differences, obviously. Just as there are differences between what Liberty, Liberty's policy and Social Security. And we know that if there's a Social Security disability decision, there's some very specific rules on how that has to be analyzed under Montour v. Hartford. The goal of workers' compensation is to put people back to work. And in the workers' compensation model, they have a step, in this case, not always, but in this case, between you're finished with your medical treatment, now we want to transition you in this program to get you back to work, because people have been out of work for a while, they're deconditioned. I'm not sure you've answered my question. Okay. I mean, I don't think there's any authority in it. I'm just trying to figure out why we would apply the workman comp definition of disability to the ERISA standard. I would not apply the workers' comp definition. What I'm suggesting is that, like Social Security, this is kind of an independent check, and a disinterested fiduciary would be interested to know what workers' comp has decided, and would consider that in making their own decision. Because workers' comp is going to have agreed medical exams, and it's a wealth of information about disability. This is something which should be considered. That certainly doesn't bind Liberty Mutual. But when workers' compensation says, we think this woman should go through a functional restoration program, in order to get back to work, I don't think you can just ignore that. It has some weight. I just was looking for authority. I don't have any. Thank you. But I think what Liberty has to know, in order to adequately have a factual record on which to make a determination, is what's going on in a functional restoration program? Why did it stop? What's her medical condition that flared up? How does that affect her ability to work? There's a host of questions that anyone trying to make a determination would need to answer, which arise because of the fact that something went wrong in this functional restoration program, and we don't know what, and we don't know why, and we don't know what her work capacity was at the end of it, because no one asked those questions. So there's not an adequate factual record upon which to make the determination following the functional restoration program. And Mrs. Sethi provided Liberty with authorizations to get whatever records they needed. She didn't have a copy of Liberty's file herself, but she made everything available to Liberty so they could go get what they needed on their own. She was not represented by counsel. Certainly, if I had been representing her at the time, we would have asked these questions, we would have found the answers, and we'd have a better record. And I think that's just one point that really, you know, the past week as I've been preparing for today, about every 15 minutes, I'm pulling my hair out because I'm saying, why didn't this woman get to an attorney earlier? And as an ERISA practitioner, it's probably the biggest problem we have is people don't understand that they need the attorney to do the ERISA appeal. All right, counsel, maybe we should hear from the opposing counsel, and then we'll give you the remainder of your time for rebuttal, if you think it necessary. I have a pretty loud voice, so I'm going to put this away from myself just a little bit so I don't deafen everybody. Your Honors, my name is Susan Handelman. I represent the Seagate Disability Plan and Liberty Life of Boston. The key question in this case and that was presented to the district court at summary judgment was whether Mrs. Sethi met the definition of disability that kicked in after she was paid by Liberty for a full year of temporary disability. Then she was paid for two years of disability under her own occupation definition of disability. She's disabled if she is unable to perform the usual duties of her own occupation. And then, after those three years passed, Liberty let Mrs. Sethi know that a new definition came into being under the plan, and she could continue to receive disability payments if she met the definition that she was unable to or disabled from working in any occupation for which she is reasonably fitted by training, education, experience, age, physical, and mental capacity. Now, this case is unusual because there was no dispute of material fact about the fact that after the three years of payments under different definitions, Mrs. Sethi was able to perform an occupation. Now, Liberty had a list of occupations that they had had an occupation that was represented by counsel. She, through her counsel, admitted that she could work. She had three doctors who admitted that she could work in a sedentary capacity. Those were Dr. Spangers, Dr. Lynn, and Dr. Abachi. There were two reviewing doctors who reviewed the medical records, all of her work records, the materials that were supplied by Mrs. Sethi herself, and they determined that she could work in a sedentary capacity. And most persuasive of all is that she did work. One, she went back to work at Seagate until the plant closed. And second, she owned a dollar store, and there was surveillance — it's in the record, the Court has undoubtedly seen this — that Mrs. Sethi was working in the dollar store. So the key question for this Court, in order to affirm, is whether there was any disputed issue of material fact as to whether she met the definition of disability. And there just isn't. But now we'd like to get to the arguments that opposing counsel has sort of thrown into the mix that, in some instances, were not even raised in the trial court. And the first one is the one that came up this morning, and that is, what does this functional — functional — Restoration. Functional, yes. Restoration program have to do with anything. One, as noted, there's no authority that a functional restoration program, which is an aspect of workers' compensation, has any role in a determination as to whether or not a person is disabled from any occupation. Second, this point about the functional restoration program not being considered by liberty, this sort of thing, this was not argued in the trial court. Third, even if it makes sense, as our courts have applied, have — have asked for — for people giving consideration to long-term disability to consider a Social Security disability as to what — how that plays into whether she's disabled under the terms of a plan or a disability insurance policy, when it comes to a functional restoration program, this is — this is key, because a functional restoration program is aimed at getting the person back to the job that they were doing when they became disabled. And in Mrs. Sethi's case, she had two jobs. She had a full-time job at Seagate, and she was a disc driver — disc drive technician, manufacturing-type job. And she also drove as a paratransit driver, drove people — disabled people to medical appointments, that sort of thing. Her disability came about as a result of a paratransit driving accident. She was hit by a car while driving. And so the workers' comp part of this program was aimed at getting her back to paratransit driving. And her doctor, Dr. Abbaci, found she was able to do sedentary work even before she engaged or was — was — was put into a position to — to take advantage of a functional restoration program, which was aimed at putting her back in paratransit driving, which is apples and oranges when it comes to disability. Is she disabled from any occupation, or is the — is the functional restoration program aimed to get her back into paratransit driving? And the former question is the one that was answered in the negative. She is capable of work, of sedentary work, and there's no dispute about that in the record. And that's why the functional — I'm sorry. Sotomayor. And I just have one question. Certainly. On the — on the discovery, and should the district court have ordered discovery regarding the conflict? Certainly. I can address that, Your Honor. In this case, the summary judgment — there were initial disclosures. Summary judgment was ordered by the court, and the court at the same time said any discovery, you — the parties need to address that during the summary judgment proceedings. And as it turns out, there was a — a request for discovery that didn't meet any of the criteria, according to the court, that had been set up for asking for discovery. The court stated that it — the party seeking discovery must show in an affidavit that it has specific — the specific facts it hopes to elicit from discovery, the fact that the facts sought exist, and the sought-after facts are essential to oppose summary judgment. Well, what — in this case, what the court found was that in the opposing counsel's request for discovery, and what they were, were speculative. The — the opposing counsel said, we never got a copy of the summary plan description. And it was provided during the — during the summary judgment proceedings. But the court ruled that the — that the liberty didn't rely on the summary plan description, which is something that every employee gets to sort of in general describe the — how the benefit works. First of all, it's consistent with the plan. And two, liberty didn't rely on it in denying the second round of long-term disability benefits, so it was irrelevant. And the other discovery was speculative. In other words, opposing counsel was speculating that certain things existed. A case mentions that liberty has training materials, therefore, those materials should have been produced. But there was no evidence, and in fact, there was a declaration to the contrary, liberty didn't rely on any of those training materials in working on this particular claim. There must — there was a — there was a small discrepancy in the two copies of the insurance policy, which there was a declaration the policy is the plan. There was a small discrepancy, and the Court describes that in the order as that one copy of the plan was produced during the claim, and then another copy was produced during discovery as the one that was in effect when her disability occurred. So there was one small change, but it was only because they were different dates. So the discovery, no criteria were met in suggesting that any discovery would have had any effect on the bottom line. There was no material that was needed, and therefore, the discovery — and the judge dealt with it in three pages of the order, so it was very well reasoned and thoroughly discussed by the Court. This is — this is an instance where — where it is unusual in the ERISA disability field where everybody agrees that the — everybody of note in the — in the case and in determining the claim agrees that Mrs. Sethi was capable of sedentary work, and therefore, the — Ginsburg. You've made that point.  No, I was just concluding and saying I'm hoping that this Court will affirm. All right. Thank you, counsel. The bottle. The interesting question which discovery would have answered is whether or not Liberty as a matter of policy has some minimum income requirement that they use in determining whether or not a particular occupation is substantial enough to stop payment of During an administrative appeal, policies and procedures which are relevant to the claim, not relied upon, but relevant to the claim, have to be produced on request. And presumably, that sort of policy would fit in there. And under subsection M8, it lists — there's a definition of what is considered relevant. So if there's a policy that Liberty Mutual has that says, well, in determining what we're going to call an acceptable occupation, if there's an income requirement for that, or if, like Social Security, we're only going to consider occupations that the — look for things that the person has done in the last 15 years, and the skills from those occupations. Any internal policy or procedure like that would Was that argument made to the district court, counsel, the argument you're making here before us? Yes. There's an express argument. Well, I think yes and no, I guess, is the answer is, is there was an express argument in writing on this 29 CFR 2560.503 section and the requirement and what has to be produced under that. In terms of a specific income level as a matter of policy, I don't recall that. So if that issue was not made before the district court, if that argument was not made before the district court, and I don't recall it from your brief, I don't think that issue is actually before us. Let's see. And this is from the supplemental excerpts of the record at page 7. Counsel for Misethi wrote to Liberty in October 2011 and requested that it produce a complete copy of the claims file, all information that Misethi is entitled to receive under 29 CFR 2560.503-1, which is relevant to her claim, three, a copy of the administrative procedures which you are required to have and provide to her under 29 CFR 2560.503-1B5 and the ERISA plan documents. Okay. So the absence of these documents, and this is, I'm just reading from our brief. The absence of these documents precludes Liberty Life from having the required, quote, reasonable claims procedure, close quote, and thus it failed to meet the minimum requirement for the full and fair review required by 11 U.S.C. 1133. Okay. Counsel, could you wind up? You have 34 seconds left. Yes. If you're not comatose, you can do something. The question is, can you do something that will be substantial and give you a living? And I would direct the Court, we did respond on that issue outside the record with a declaration of Misethi. All right. Thank you, counsel. Thank you to both counsel. The case thus argued is submitted for decision by the Court. The final case on account for argument is Sidi Aquino v. Bertoli, the case of CNS v. Nelson has been submitted on the brief.
judges: Fisher, Rawlinson, Murguia